

1

2

3

4

5

6

7

8

9

10

11              **UNITED STATES DISTRICT COURT**

12            **SOUTHERN DISTRICT OF CALIFORNIA**

13

14   JOHN MARKEY,                              CASE NO. 06-CV-1300 W (RBB)

15

16                              Plaintiff,     **ORDER GRANTING**

17      v.                                     **MOTION TO DISMISS**

18   KUDELSKI S.A., et al.,

19

20                             Defendants.

21

22       On July 11, 2006, Plaintiff John Markey filed a complaint alleging employment

23   discrimination, breach of contract, and breach of the implied covenant of good faith and

24   fair dealing against Defendants Kudelski S.A. (a Swiss corporation), Nagravision S.A.

25   (also a Swiss corporation), and Nagra USA, Inc. (a New York corporation).  Kudelski

26   moves to dismiss for lack of personal jurisdiction under Federal Rule 12(b)(2).  Because

27   Markey has not met his burden to show either general or specific jurisdiction through

28   admissible evidence, the court will **GRANT** the motion.

-1-                                      06cv1300

Dockets.Justia.com

1  **I.      Facts & Legal Standards**

2  Markey's lawsuit arises out of his employment with Kudelski. In November 1998,

3  he signed an employment contract with Kudelski entitling him to a base salary, a bonus,

4  and terminable annually for cause upon three months' notice. (Compl. ¶ 8.) He alleges

5  that Kudelski and other companies wanted him to participate in a fraudulent scheme,

6  but he believed it would subject him to criminal liability. (Id. ¶¶ 10–11.) His refusal,

7  along with his rheumatoid arthritis, national origin, and age, all contributed to his

8  unlawful termination. (Id. ¶¶ 11–14.)

9  Kudelski representatives met with Markey in October and November 1998,

10  apparently at a trade show in the Los Angeles area. (Markey Decl. ¶ 6; Def.'s Reply in

11  Supp. at 3.) According to Markey, Kudelski's principal, Andre Kudelski, had dinner

12  with him and discussed an offer of employment in some detail. (Markey Decl. ¶ 7.)

13  Markey then flew to Switzerland to complete the negotiations and sign the contract

14  with Kudelski, S.A. (Id. ¶¶ 7–8.) Thereafter, a Kudelski subsidiary, Nagra USA, Inc.,

15  paid his salary and benefits. (Id. ¶ 21.)

16  From November 1998 to the present, Markey lived in San Diego, visited Kudelski

17  subsidiaries, and assumed responsibilities in sales and marketing for Kudelski products.

18  (Markey Decl. ¶ 19–22.) He provided his own office equipment, but received

19  reimbursements for long-distance telephone calls. (Id. ¶ 20.) He asserts that no

20  Kudelski entity ever told him that Kudelski, S.A. technically no longer employed him

21  (id. ¶ 25), and further, that some correspondence suggested otherwise (id. ¶ 26–27).

22  Rule 12(b)(2) provides that a court may dismiss a claim for "lack of jurisdiction

23  over the person." Fed. R. Civ. P. 12(b)(2). Although the defendant is the moving party

24  in a motion to dismiss, the plaintiff invoked the court's jurisdiction, and therefore bears

25  the burden of proof on the necessary jurisdictional facts. Ballard v. Savage, 65 F.3d

26  1495, 1497 (9th Cir. 1995); Fields v. Sedgwick Associated Risks, Ltd., 796 F.2d 299, 301

27  (9th Cir. 1986); Spacey v. Burgar, 207 F. Supp. 2d 1037, 1042 (C.D. Cal. 2001).

28  //

1   When a defendant responds to a complaint with a motion to dismiss, the plaintiff
2  need only make a prima facie showing of personal jurisdiction.  Myers v. Bennett Law
3  Offices, 238 F.3d 1068, 1071 (9th Cir. 2001);  Data Disc., Inc. v. Sys. Technology
4  Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).  In this context, a "prima facie"
5  showing means that plaintiff has produced admissible evidence that, if believed, would
6  be sufficient to establish the existence of personal jurisdiction.  See WNS, Inc. v.
7  Farrow, 884 F.2d 200, 203–04 (5th Cir. 1989).
8   The allegations contained in the affidavits and pleadings must assert particular
9  facts which establish the necessary ties between the defendant and the forum state.
10  Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 185 (2nd Cir. 1998); H.M. Greenspun
11  v. Del E. Webb Corp., 634 F.2d 1204, 1208 n.5 (9th Cir. 1980).  The court must weigh
12  the substantiated pleadings and declarations in the light most favorable to the plaintiff
13  and resolve all factual disputes in the plaintiff's favor.  Data Disc, Inc. v. Sys.
14  Technology Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).  If the plaintiff
15  establishes sufficient minimum contacts with the forum state, the burden shifts to the
16  defendant to show that the exercise of jurisdiction would be unreasonable.  Burger King
17  Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).
18
19  II.   Discussion
20   Markey argues that the court may exercise both general and specific jurisdiction
21  over Kudelski.  Both forms of jurisdiction over a corporate entity depend on the
22  California long-arm statute, Cal. Code Civ. Proc. § 410.10, and ultimately the Due
23  Process Clause, see Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).  Because
24  Kudelski ceased operations in California before Markey filed suit, the court cannot
25  exercise general jurisdiction.  Further, Markey has failed to establish a prima facie case
26  of specific jurisdiction because the contract negotiations and course of dealing do not
27  manifest that Kudelski purposefully availed itself of California law.  Therefore, the court
28  will **GRANT** the motion to dismiss.

1   **A.      Kudelski no longer has a continuous and systematic presence in California.**

2   Because general jurisdiction posits a corporation's *presence* in a forum state—as

3   opposed to a nexus between isolated acts and a resident's claim—Markey must show

4   that Kudelski's contacts with California amount to a "physical presence." See Burnham

5   v. Superior Ct., 495 U.S. 604, 619 (1990).  Kudelski objects to substantially all of

6   Markey's proof, arguing that Kudelski's contacts "years before it ceased doing business

7   in the forum do not subject the company to general jurisdiction." (Def.'s Obj. ¶¶ 4–6,

8   10–15, 17–19.)  Kudelski relies on Serafini v. Superior Ct., 68 Cal. App. 4th 70, 80

9   (1998), for that proposition.  As the court will explain, Kudelski misunderstands

10  Serafini, but nevertheless prevails because, on balance, Markey's evidence falls short of

11  establishing the continuous, substantial, and systematic contacts necessary to sustain

12  general jurisdiction.  See Helicopteros Nacionales de Columbia v. Hall, 466 U.S. 408,

13  414–15 (1984).

14  Markey avers generally that Kudelski conducted business in California in

15  numerous forms, from 1951 through at least 1998.  (Markey Decl. ¶¶ 9, 10, 12–15,

16  17–18.)  But Markey's causes of action arose years later—at the absolute earliest,

17  November 1, 2002, the first date he alleges a breach of contract. (Compl. ¶ 11.)  Under

18  California law, a court cannot fairly exercise general jurisdiction over an individual who

19  "unequivocally cease[s]" doing business before service of process.  See Serafini, 68 Cal.

20  App. 4th at 80.  An analogous rule governs general jurisdiction over corporations.

21  Compare Restatement (2d) Conflict of Laws § 35 (1971) (cited in Serafini) with

22  Restatement § 48 ("A state has power to exercise judicial jurisdiction over a foreign

23  corporation which has done business in the state, but has ceased to do business there

24  at the time when the action is brought, with respect to causes of action *arising from the*

25  *business done in the state*.") (emphasis added).

26  The case law does not entirely clarify the time frame for analyzing contacts, or

27  which party bears the burden to prove a withdrawal from the forum state.  See, e.g.,

28  Keech v. LaPointe Mach. Tool Co., 491 A.2d 10, 13 (N.J. Super. Ct. App. Div. 1985)

1  (stating without explanation that general jurisdiction ended immediately upon the last

2  contact plaintiff alleged); Asset Allocation & Mgmt. Co. v. W. Employers Ins. Co., 892

3  F.2d 566, 570–71 (7th Cir. 1989) (interpreting Illinois law to require substantial

4  contacts up until the plaintiff files suit, even if the defendant introduces evidence of a

5  withdrawal from the forum state). But see, e.g., Schlobohm v. Shapiro, 784 S.W.2d 355,

6  359 (Tex. 1990) (reasoning that all contacts must be "carefully investigated, compiled,

7  sorted, and analyzed for proof of a pattern of continuing and systematic activity").

8         Lacking any definitive guidance from California courts, and in the face of

9  conflicting evidence, this court concludes that Markey has not shown substantial

10  contacts that continued at least through the date Kudelski allegedly breached the

11  contract. Even though the court exercises jurisdiction upon the date of suit, jurisdiction

12  based on "presence" might relate back to the injury. Cf. Asset Allocation, 892 F.2d at

13  570–71. Regardless, the court cannot ignore the weighty constitutional concerns

14  underlying jurisdiction, or relieve the plaintiff of his burden to prove jurisdictional facts

15  through unfounded inferences, especially in a case involving foreign defendants. See In

16  re Automobile Antitrust Cases, 135 Cal. App. 4th 100, 112–113.

17         Kudelski has set forth specific facts showing that the Kudelski entities

18  "unequivocally ceased" doing business in California on July 7, 1999. (Goetschmann

19  Decl. ¶¶ 5–9.) Kudelski never incorporated in California, never had an agent for service

20  of process in California, and never owned property, held bank accounts, or ran offices

21  in California. (Id.) Markey's only allegations relating to Kudelski's "presence" in

22  California after July 1999 describe sales of Kudelski- and Nagra-branded equipment that

23  (probably) still occupies space in California motion-picture studios. (Markey Decl. ¶¶

24  8–15.) But the court cannot accept the continued presence of equipment in California

25  alone as sufficient to confer general jurisdiction. See World-Wide Volkswagon Corp.

26  v. Woodson, 444 U.S. 286, 295 (1980) (disallowing specific jurisdiction over a car

27  manufacturer based on a car's mere presence in forum state).

28         In short, the court declines to infer that the contacts Markey alleges, even if they

1  were substantial, continuous, and systematic, remained so for several years beyond the

2  time frame he alleges.  See Automobile Antitrust Cases, 135 Cal. App. 4th at 112–13.

3  Thus, much of Markey's evidence is not irrelevant, as Kudelski argues, but rather, does

4  not on the whole establish a basis for exercising general jurisdiction over a claim that

5  arose in 2002 at the earliest.  Further, if Markey means to argue that his own activities

6  should be imputed to Kudelski because he reasonably believed Kudelski employed him

7  (Markey Decl. ¶¶ 25–27), the court discounts that argument based on his own

8  admissions that he provided his own office equipment and a subsidiary paid his salary

9  (id. ¶¶ 20–21).  Accordingly, Markey has failed to show that the court may exercise

10  general jurisdiction over Kudelski.

11

12  **B.      Kudelski's forum-related activities do not show purposeful availment.**

13        Markey alleges that Andre Kudelski, on behalf of Kudelski, S.A., traveled to

14  California to discuss an offer of employment and attend a meeting of the Motion Picture

15  Association in November 1998.  (Markey Decl. ¶ 7.)  Beyond that equivocal contact,

16  however, nothing Markey alleges demonstrates that Kudelski purposefully availed itself

17  of California law.  Accordingly, the court will **GRANT** Kudelski's motion to dismiss for

18  lack of personal jurisdiction.

19        Under Ninth Circuit law, the court must evaluate personal jurisdiction in a three-

20  step process: (1) the defendant must perform some act by which he purposefully avails

21  himself of the privilege of conducting activities in the forum, thereby invoking the

22  benefits and protections of its laws; (2) the claim must arise out of the forum-related

23  activities; and (3) the exercise of jurisdiction must be reasonable.  Shute v. Carnival

24  Cruise Lines, 897 F.2d 377, 381 (9th Cir. 1990).  Due process requires *purposeful*

25  availment so that "random, fortuitous, or attenuated" contacts, or "the unilateral

26  activity of another party or a third person," do not result in an unwarranted exercise of

27  jurisdiction.  See Burger King, 471 U.S. at 475.

28        Further, the Supreme Court has addressed the significance of purposeful

1   availment in a contracts case.  Because a contract is "ordinarily but an intermediate step
2   serving to tie up prior business negotiations with future consequences," the court must
3   analyze four primary factors to determine whether the defendant *purposely* established
4   minimum contacts within the forum: (i) prior negotiations, (ii) contemplated
5   consequences, (iii) the terms of the contract, and (iv) the parties' actual course of
6   dealing.  Burger King, 471 U.S. at 478–79.  Rejecting a "mechanical" test or
7   "conceptualistic" theory yet again, the Court squarely denied that an individual's
8   contract with an out-of-state entity could alone establish jurisdiction.  Id. at 478.
9   Following the Supreme Court's guidance, the court will analyze each factor in turn,
10  bearing in mind the "constitutional touchstone whether the defendant purposefully
11  established 'minimum contacts' in the forum state."  Id. at 474.

12      *Prior negotiations.*  Kudelski offered to employ Markey, according to Markey's
13  allegations, on a visit to California in November 1998.  An offer of employment made
14  in person and within the forum, unlike a mere advertisement directed at the forum, may
15  suggest purposeful availment.  Cf. Johnston v. Frank E. Basil, Inc., 802 F.2d 418, 420
16  (11th Cir. 1986); Katerndahl v. Brindenberg Sec., A/S, No. C-96-2314, 1996 WL
17  743800, at *4 (N.D. Cal. Dec. 9, 1996).  Setting aside the evidentiary problem with
18  Markey's allegation—whether Markey may competently testify as to the *legal effect* of
19  Kudelski's statements—Markey admits that Kudelski entered California for at least one
20  other, possibly primary, reason: to attend the MPA meeting.  "Although territorial
21  presence frequently will enhance a potential defendant's affiliation with a state," Burger
22  King, 471 U.S. at 476, Markey does not allege that Kudelski traveled to California solely
23  to extend the employment offer, undermining the significance of this contact.

24      Kudelski, once safely in Switzerland, phoned Markey and invited him to
25  Switzerland to finish the negotiations.  "Use of the . . . telephone or other international
26  communications simply do not qualify as purposeful activity invoking the benefits and
27  protections of the forum state."  Peterson v. Kennedy, 771 F.2d 1244, 1262 (9th Cir.
28  1985).  Markey then unilaterally abandoned California and signed the contract in

1    Switzerland.  Because Kudelski insisted that Markey visit Switzerland to sign the
2    contract, the court concludes that the activities outside California outweigh the
3    significance of Kudelski's brief, equivocal contact with California in November 1998.
4    On balance, then, the parties' negotiations do not evidence purposeful availment.

5           *Contemplated consequences.*  Markey offers no evidence of the *contemplated*
6    consequences of the contract beyond its express terms and the actual course of his
7    employment.  Markey never alleges that he expected different consequences than the
8    contract reflected when he signed it.  Thus, the court does not find this factor helpful
9    to its analysis.

10          *Terms of the contract.*  Kudelski hired Markey as a senior vice president in charge
11   of sales and marketing for pay-TV products for a one-year, renewable term at $140,000
12   plus bonus.  The contract specifies his location as "for the time being abroad" and
13   obligates him to spend 50% of his time in Switzerland.  Swiss law governs the "merits"
14   of the contract.  Markey was to report to Andre Kudelski directly.  By its own terms,
15   then, the contract reflects no purposeful availment of California law.  The contract only
16   mentions California once: to recite Markey's address.

17          If anything, its terms show that Kudelski purposefully *avoided* availing itself of the
18   benefits and protections of California law.  Kudelski induced Markey to agree to spend
19   half his time in Switzerland—and Markey would likely spend at least some time in the
20   United States but outside California as senior vice president.  Thus, by employing a
21   California resident who agreed to spend most of his time outside California, Kudelski
22   only availed itself of California law in a fortuitous and attenuated way.

23          *Actual course of dealing.*  Markey admits far too many damaging facts to carry his
24   burden on this crucial factor.  During the course of his employment, Markey accepted
25   paychecks and benefits from Nagra USA, Inc., in Tennessee.  He visited its offices soon
26   after his contract began.  Granted, Andre Kudelski apparently acknowledged in 2002
27   that Markey's employment base was the United States.  (Markey Decl. ¶ 19.)  But this
28   was long after Kudelski ceased all operations in California and apparently assigned its

1 rights to Markey's services to its subsidiaries. (Goetschmann Decl. ¶¶ 12–13.) Finally,

2 Markey also admits that the meeting that allegedly gave rise to his termination occurred

3 in Switzerland. Thus, nothing during the parties' course of dealing alters the conclusion

4 the court has drawn from its analysis of the other factors.

5      In short, Kudelski's sole act suggesting purposeful availment was to contract with

6 a California resident. But that act cannot establish specific jurisdiction—even over a

7 breach-of-contract claim—when other evidence shows that a Kudelski agent entered

8 California for an unrelated reason, requested that Markey negotiate and sign a contract

9 in Switzerland, and centered its affairs during the course of the contract in Switzerland.

10 Therefore, the court concludes that Kudelski did not purposefully avail itself of

11 California law.

12

13 **III.    Conclusion**

14      Because Kudelski did not purposefully avail itself of California law, the court lacks

15 personal jurisdiction over it. Thus, the court hereby **GRANTS** Kudelski's motion to

16 dismiss.

17      **IT IS SO ORDERED.**

18

19 DATED:  April 3, 2007

20

21                                             Hon. Thomas J. Whelan
                                            United States District Judge

22

23

24

25

26

27

28

06cv1300