1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

11  JOHN MARKEY,                                   CASE NO. 06-CV-1300 W (RBB)

12                                  Plaintiff,     **ORDER DENYING
                                                   DEFENDANTS' MOTION FOR
13          vs.                                    ATTORNEY'S FEES (Doc. No.
                                                   83.)**
14  KUDELSKI S.A., et al.,

                                    Defendants.
15

16          On July 11, 2006 Plaintiff John Markey ("Plaintiff") commenced this action

17  against Defendants Kudelski S.A., Nagravision S.A., and Nagra USA, Inc. alleging

18  breach of contract, wrongful termination and adverse action, and employment

19  discrimination. (Doc. No. 1.) Pending before the Court is Defendant Nagravision's and

20  Defendant Nagra USA, Inc.'s (collectively, "Defendants") Motion for Attorney's Fees.

21  (Doc. No. 83.)  The Court decides the matter on the papers submitted and without oral

22  argument pursuant to S.D. Cal. Civ. R. 7.1(d.1).  For the reasons stated below, the

23  Court **DENIES** Defendants' motion for attorney's fees.  (Doc. No. 83.)

24  ///

25  ///

26  ///

27  ///

28  ///

I.   **B**ACKGROUND

On July 11, 2006, Plaintiff filed a complaint against Defendants alleging nine causes of action: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) wrongful termination in violation of public policy; (4) wrongful adverse action in violation of public policy; (5) national origin discrimination under the California Fair Employment and Housing Act; (6) national origin discrimination under Title VII of the Civil Rights Act of 1964; (7) continuing disability discrimination in violation of California Government Code § 12940; (8) age discrimination in violation of California Government Code § 12940; and (9) age discrimination in violation of the Age Discrimination in Employment Act.  (Doc. No. 1.)  On November 7, 2007, Defendants filed an amended Motion for Summary Judgment, or in the alternative, Partial Summary Judgment.  (Doc. No. 64.)  On January 3, 2008, the Court granted Defendants' Motion for Summary Judgment in its entirety and dismissed all of Plaintiff's breach of contract and discrimination claims with prejudice.  (*Order Granting Defs.' Mot. for Summ. J.* 22 [hereinafter *Order*].)

### A.   Plaintiff's Breach of Contract Claim

In his complaint, Plaintiff alleged that Defendants breached his employment contract because he was terminated without the required notice, without cause, and without being paid his required bonuses.  (*Compl.* ¶¶16–19.)  Defendants argued that, under Swiss law, they had valid reasons to accelerate the termination of Plaintiff's contract after initially providing three months notice.  (*Defs.' Summ. J. Mot.* 15.) Specifically, Plaintiff's low productivity and absenteeism gave Defendants valid reasons to immediately terminate Plaintiff, despite giving the three months as required by contract.  (*Id.* 15–16.)  Plaintiff did not dispute his low output, but argued that his absenteeism resulted from Defendants' refusal to cover travel costs.  (*Pl.'s Opp'n* 9.) Because the Court determined it was undisputed that valid reasons existed to accelerate the ultimate termination of Plaintiff's contract, there were no genuine issues of material

1  fact concerning Defendants' alleged breach of contract.  (*Order* 11.)  The Court

2  dismissed Plaintiff's first cause of action with prejudice.  (*Id.*)

3

4      **B.**    **Plaintiff's Implied Covenant of Good Faith and Fair Dealing Claim**

5      In his complaint, Plaintiff alleged that Defendants breached an implied covenant

6  in his employment contract because Defendants did not fairly, honestly, and reasonably

7  perform the terms and conditions of the contract.  (*Compl.* ¶¶ 20–23.)  Defendants

8  argued that Plaintiff's claim for breach of the implied covenant of good faith and fair

9  dealing failed because Swiss law did not imply any such covenant, and Plaintiff's

10 contract had to be analyzed under Swiss law.  (*Defs.' Summ. J. Mot.* 17.)  Even if

11 California law was applied, Defendants contended, the implied covenant could not be

12 used to secure benefits in addition to those for which the parties contracted.  (*Id.*)

13 Plaintiff responded by arguing that the covenant could be violated if an employee's

14 termination was a mere pretext to cheat the employee out of a benefit to which they

15 were already entitled.  (*Pl.'s Opp'n* 10.)  Plaintiff argued that because Defendants did not

16 give him work, he was unable to earn the discretionary bonus he had previously been

17 paid.  (*Id.*)  The Court ruled that Plaintiff presented no evidence suggesting Defendants

18 frustrated Plaintiff's rights to receive any benefits under the original employment

19 agreement.  (*Order* 11.)  The Court also determined that Plaintiff produced no evidence

20 that his employment agreement entitled him to some minimum level of guaranteed

21 contact or assigned work.  (*Id.*)  Thus, because Plaintiff did not produce any evidence

22 showing that Defendants frustrated or refused any actually agreed upon right or benefit,

23 the Court dismissed Plaintiff's second claim with prejudice.  (*Id.* 12.)

24

25     **C.**    **State and Federal Discrimination Claims**

26     In his complaint, Plaintiff alleged that Defendants discriminated against and

27 otherwise unlawfully treated him on the basis of his national origin, disability, and age.

28 (*Compl.* ¶¶ 34–70.)  Defendants argued that under <u>McDonnell Douglas Corp. v. Green</u>,

411 U.S. 792 (1973) they, as employers, articulated legitimate, non-discriminatory reasons for Plaintiff's alleged adverse employment actions.  (*Defs.' Summ. J. Mot.* 18.) Because Plaintiff could not show that these reasons were pretextual, Plaintiff's discrimination claims necessarily failed at the summary judgment stage.  (*Id.* 18–19.) Plaintiff argued that he had established *prima facie* claims for employment discrimination, and in a conclusory manner argued that, from the record, a jury might be able to find in his favor.  (*Pl.'s Opp'n* 10–11.)

The Court found that Plaintiff seemed to complain of two adverse actions: (1) his appointment to Strategic Advisor in 2002, and (2) his termination in 2004.  (*Compl.* ¶¶ 11, 13.)  As a threshold issue, the Court determined that Plaintiff's appointment to Strategic Advisor was not an adverse action, and thus not actionable.  (*Order* 14.) Ultimately, the Court ruled that Defendants articulated and supported several legitimate reasons for Plaintiff's termination, which Plaintiff failed to show were pretextual.  (*Id.* 15–19.)

### 1.    Plaintiff's National Origin Discrimination Claims

In his complaint, Plaintiff alleged that Defendants engaged in a course of discriminatory and harassing conduct against him because he was an American working for a Swiss company. (*Compl.* ¶¶ 34–49.) Defendants contended that Plaintiff's national origin discrimination claims were based on nothing more than a few "stray remarks" unrelated to his termination.  (*Defs.' Summ. J. Mot.* 23–25.)  Plaintiff generally alleged that he had evidenced numerous comments showing animosity toward him based on his national origin which were sufficient for a jury to find in his favor.  (*Pl.'s Opp'n* 11.) Plaintiff also claimed that Nagravision's reasons for dismissal were pretextual because Plaintiff was never told that his job performance was unsatisfactory.  (*Id.*)

The Court held that Plaintiff failed to demonstrate that the purported discriminatory national origin comments were anything more than stray remarks unrelated to the decision to terminate him.  (*Order* 17.)  Although Plaintiff argued that

discrimination must have been behind his termination because no one told him that his performance was lacking, Plaintiff provided no evidence that Defendant had an affirmative duty to counsel him.  (*Id.*)  Because Plaintiff failed to produce evidence of pretext on his national origin discrimination claims, the Court dismissed Plaintiff's fifth and sixth causes of action with prejudice.  (*Id.*)

### 2.   Plaintiff's Disability Claim

In his complaint, Plaintiff alleged that Defendants discriminated against, refused to accommodate, and otherwise unlawfully treated him on the basis of his rheumatoid arthritis ("RA").  (*Compl.* ¶¶ 50–57.)  Defendants argued that Plaintiff presented no evidence suggesting that his RA had anything to do with his termination.  (*Defs.' Summ. J. Mot.* 25–26.)  Plaintiff, however, claimed that Nagravision admitted to Plaintiff that his RA was a factor in his termination.  (Pl.'s Opp'n 11.)

The Court found that Plaintiff presented no evidence, besides uncorroborated and self-serving testimony, which suggested that his disability had any effect on Defendant's decision to terminate him.  (*Order* 18.)  Therefore, because there were no genuine issues of material fact regarding Plaintiff's RA and the decision to terminate him, or that Defendant's reasons for terminating Plaintiff were merely a pretext for disability discrimination, the Court dismissed Plaintiff's seventh cause of action with prejudice.  (*Id.*)

### 3.   Plaintiff's Age Discrimination Claims

In his complaint, Plaintiff, who was forty-eight at the time of his termination, alleged that Defendants continually discriminated against and harassed him on the basis of his age. (*Compl.* ¶¶ 57–70.)  Defendants argued that Plaintiff presented no admissible evidence which suggested that Plaintiff's termination had anything to do with age. (*Defs.' Summ. J. Mot.* 26–27.)  Plaintiff did not oppose Defendants' arguments against his age discrimination claims and Plaintiff admitted that no person at Nagravision,

1   including Kudelski, ever commented on his age or how his age might have affected his
2   performance. (*Markey Dep. Vol. 1* 71:13-72:3, 76:24-77:4, 77:25-78:8, 78:18-23, 79:22-
3   80:2, 80:21-81:1, 81:16-23.)  Moreover, Plaintiff presented no evidence that he was
4   replaced by a substantially younger person after he was terminated (or if he was replaced
5   at all).  Because Plaintiff presented no evidence suggesting that his age played any role
6   in the decision to terminate him, or that Defendants' reasons for terminating him were
7   merely a pretext for age discrimination, the Court dismissed Plaintiff's eighth and ninth
8   causes of action with prejudice. (*Order* 19.)

9

10          **D.      Plaintiff's Wrongful Termination in Violation of Public Policy Claim**
11                 In his complaint, Plaintiff alleged that Defendants wrongfully terminated him in
12   violation of public policy because Defendants discharged him, at least in part, for his
13   refusal to support or participate in fraudulent activities. (*Compl.* ¶¶ 24–34.) Defendants
14   argued that Plaintiff's termination did not violate public policy because Plaintiff did not
15   show a public policy which was implicated by his termination.  (*Defs.' Summ. J. Mot.*
16   27–30.)  Defendants also argued that Plaintiff could not connect his termination with
17   any alleged public policy violation because Plaintiff was never asked  to do anything
18   illegal.  (*Id.* 31.)  Plaintiff argued, in a conclusory fashion, that he had abundant
19   evidence that he refused to take part in illegal payments, and was demoted and
20   terminated because of his reluctance. (*Pl.'s Opp'n* 7.)
21          The Court determined that Plaintiff failed to confront or distinguish most of
22   Defendants' arguments. (*Order* 19.)  Moreover, the Court ruled that Plaintiff's vague,
23   second-hand, and self-serving testimony regarding this cause of action did not create a
24   genuine issue of material fact, and that Plaintiff failed to present evidence which
25   suggested Defendants violated public policy by terminating Plaintiff.  (*Id.* 21.)  Thus,
26   because Plaintiff failed to support his termination in violation of public policy claim with
27   facts or law sufficient to create a genuine issue of material fact of whether a policy
28   actually applied or how it was violated, the Court dismissed Plaintiff's third cause of

1  action with prejudice.  (*Id.*)

2

3  **II.   LEGAL STANDARD**

4       Under 42 U.S.C. § 2000e-5(k), the district court "in its discretion, may allow the

5  prevailing party . . . a reasonable attorney's fee . . . as part of the costs."  According to

6  the Supreme Court, this statutory language gives defendants the right to recover

7  attorney's fees. Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978).  Thus,

8  "a district court may in its discretion award attorney's fees to a prevailing defendant in

9  a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or

10 without foundation, even though not brought in subjective bad faith." Id.  An award

11 is therefore appropriate where the "plaintiff continued to litigate after [the claim] clearly

12 became" frivolous, unreasonable, or without foundation. Id. at 422.  However, the

13 "policy considerations which support the award of fees to a prevailing plaintiff are not

14 present in the case of a prevailing defendant." Id. at 418-19 (citation omitted).

15 Consequently, the courts are cautioned not "to engage in *post hoc* reasoning by

16 concluding that, because a plaintiff did not ultimately prevail, his action must have been

17 unreasonable or without foundation." Id. at 421-22; see also EEOC v. Bruno's Rest.,

18 13 F.3d 285, 290 (9th Cir. 1993) (criticizing a district court for awarding the prevailing

19 defendant attorney's fees because doing so undercut Congress's desire to vigorously

20 enforce Title VII).

21       The Ninth Circuit has urged district courts to be "mindful of Congress' intent in

22 enacting [§ 2000e-5(k), because that] section was not designed as a general penalty

23 provision for unsuccessful plaintiffs," and "[o]nly in exceptional cases did Congress

24 intend that defendants be awarded attorney's fees under Title VII." Mitchell v. Office

25 of L.A. County Superintendent of Sch., 805 F.2d 844, 847-848 (9th Cir. 1986).  The

26 Ninth Circuit elaborated that "[t]here is a significant difference between the bringing

27 of cases with no foundation in law or facts at the outset and the failure to present

28 evidence sufficient to justify relief at trial." Id. at 847. Accordingly, if neither party

could have predicted the suit's resolution with "absolute confidence," then an attorney's fees award is unwarranted.  Dosier v. Miami Valley Broad. Corp., 656 F.2d 1295, 1301 (9th Cir. 1981); see also Shah v. Mount Zion Hosp. & Med. Ctr., 642 F.2d 268, 270 n.2 (9th Cir. 1981) (acknowledging that plaintiff's appeal "border[ed] on the frivolous," but denying prevailing defendant's request for attorney's fees because plaintiff's appeal was not entirely frivolous, unreasonable, or without foundation).  Ultimately, the decision to award defendants attorney's fees falls squarely within the district court's sound discretion.  Crowe v. Wiltel Communications Sys., 103 F.3d 897, 900-01 (9th Cir. 1996).

## III.   DISCUSSION

Having conducted a thorough review of the papers submitted, the Court finds compelling reasons to deny the fees sought by Defendants.  First, the Court finds that Plaintiff's action was not clearly frivolous, unreasonable, or without foundation.  Although, like Shah, certain claims may have neared frivolity, Plaintiff's suit—on the whole—was not completely baseless.  As the Ninth Circuit explicitly stated in Mitchell, there is a difference between bringing an inherently unreasonable action and commencing one that is ultimately unsuccessful.  This critical distinction is evidenced here: although Plaintiff was able to establish a prima facie case on several claims, he was unable to provide evidence sufficient to survive summary judgment.

Policy and precedent also support the Court's decision to deny Defendants' motion.  Granting a prevailing defendant attorney's fees in a discrimination suit is a rarity and should only be done in exceptional cases.  See Mitchell, 805 F.2d at 847–48.  The Court, in its discretion, determines that the instant case does not meet this high standard of exceptionality because Plaintiff's case was not completely without foundation.  Furthermore, even if the Court was inclined to grant Defendants' motion, Defendants failed to provide adequate documentary support for their contention that a claim for $427,561.00 in attorney's fees is, in fact, reasonable under the present

circumstances.

## IV.   CONCLUSION AND ORDER

In light of the foregoing, the Court **DENIES** Defendants' Motion for Attorney's Fees in its entirety.  (Doc. No. 83.)

**IT IS SO ORDERED.**

DATED:  March 26, 2008

_____
Hon. Thomas J. Whelan
United States District Judge